IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 07-cv-00906-LTB

JESSICA RODRIGUEZ,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.
_____

## ORDER
_____

Plaintiff, Jessica Rodriguez, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying her application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and her application for supplement security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments will not materially aid in the resolution of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE the SSA Commissioner's final order and REMAND for further proceedings.

## I. STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income. [Administrative Record ("AR") 64, 157] The applications were initially denied on December 13, 2004. [AR 36, 47] An Administrative Law Judge ("ALJ") subsequently conducted an evidentiary hearing and issued a written ruling on October 17, 2006, denying Plaintiff's applications on the basis that she was not

disabled because while she is unable to perform her past relevant work, she is able to make an adjustment to other work which exists in significant numbers in the national economy (Step Five). [AR 19-27]  On May 17, 2007, the SSA Appeals Council denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 6]   Plaintiff timely filed her complaint with this court on May 2, 2007, seeking review of the Commissioner's decision.

## II.  FACTS

Plaintiff was born on July 2, 1959, and was 47 years old on the date of the ALJ's decision. [AR 20, 64, 221]  She has an eleventh grade education.  [AR 20, 75, 221]  Her relevant prior work history is as a machine operator/magnetic tape loader. [AR 20, 73, 224]  Plaintiff alleges that she became disabled on April 4, 2003, because of a learning disorder.  [AR 72]

The evidence in the record pertaining to Plaintiff's mental impairment is as follows.  In 1967, at age six or seven, Plaintiff was assessed with a child's IQ test score of 69. [AR 109]  She completed the eleventh grade primarily through special education programs. [AR 20, 221] Plaintiff worked in the relevant past, from 1995 to April of 2003, as a machine operator testing computer tapes for recycling. [AR 51-56, 73, 223-28]  After she lost her job, Plaintiff sought help obtaining new work from the Colorado Department of Rehabilitation on September 1, 2004. [AR 100].

On September 10, 2004, a consultative psychological examination of Plaintiff revealed a verbal IQ score of 69, a performance IQ score of 76, and a full scale IQ scores of 70 on the Wechsler Adult Intelligence Scale-III. [AR 137]  Plaintiff was described as a "slow learner" in that she read at an early second grade level, performed mathematics at the fourth grade level and

2

wrote at late first grade level. [AR 138-39]  She was diagnosed with borderline intellectual functioning, a reading disorder, and a disorder of written expression.  [AR 139]

On December 10, 2004, a State Agency psychiatrist consultant reviewed Plaintiff's records and concluded that her mental condition resulted in mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. [AR 122-34]  The psychiatrist also concluded that Plaintiff's mental condition did not meet or equal the requirements of any listed impairment and, specifically, that she was not mentally retarded. [AR 120, 126]  The resulting mental residual functional capacity ("RFC") assessment was that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, but was not significantly limited in her understanding and memory, sustained concentration and persistence, social interaction, and adaption. [AR 118-19]   As such, the psychiatrist consultant concluded that Plaintiff could perform simple tasks that can be learned in 30 days or less and "there is no mental impairment that would prevent her from retraining to her level of prior work if her physical condition permits." [AR 120]

In October 2005, a state vocational rehabilitation services individualized plan for employment provided Plaintiff job seeking skills, job placement services, employer incentives, job modifications as needed, job coaching, on-the-job training as needed, transportation and guidance counseling. [AR 92-98]

The evidence in the record pertaining to Plaintiff's physical impairments is as follows.  In July 2006, a consultative physical examination of Plaintiff resulted in a diagnosis of probable chronic lumbosacral strain – which could not exclude disc disease, but noted no radiculopathy–

probable chronic hepatitis C – but no cirrhosis, and borderline intellectual functioning. [AR 145] The physician opined that Plaintiff could walk and/or sit six hours a day, and lift ten pounds frequently and twenty pounds occasionally, with limited stooping, crouching, pushing, and pulling. [AR 145] Plaintiff had no manipulative limitations, but her stamina would be poor due to chronic hepatitis. [AR 145]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If she is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920. Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant is unable to show that her medical impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits. Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then

requires the claimant to show that her impairment(s) and assessed residual functional capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520 (e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity since her alleged onset date (Step One). [AR 20, 26] The ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine and organic mental disorder (Step Two). [AR 20, 26] However, the ALJ further determined that such impairments or combination of impairments do not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 26] As a result, the ALJ went on to find that Plaintiff has the RFC to:

> lift and carry twenty pounds occasionally and ten pounds frequently, sit thirty minutes at a time for a total of more than six hours a day, stand thirty minutes at a time for a total of approximately four hours a day and walk forty minutes at a time for a total of approximately four hours a day, all with regular breaks. The claimant is able to push and pull occasionally. She is able to frequently balance and work in exposure to temperature extremes, wetness and humidity, vibrations, fumes and odors. She

5

is able to occasionally stoop, kneel, crouch, crawl, drive a motor vehicle, and climb ramps, stairs, ladders and scaffolding. She is able to work in exposure to moderate noise. She is not able to work at heights. She is able to understand, remember and carry out basic one and two step instructions that can be learned within thirty days. She is able to perform reasoning at a level two, mathematics at a level one and language at a level one, as described in the <u>Selected Characteristics of Occupations</u>, Scale of General Educational Development. She requires a routine, repetitive and unchanging work environment. [AR 24, 26]

The ALJ then found that Plaintiff was unable to perform her past relevant work (Step Four). [AR 21, 26] However, the ALJ went on to determine that, considering her age, education, work experience and RFC, there are jobs that exist in the national economy that Plaintiff can perform. [AR 26] As a result, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under disability as defined by the Social Security Act. [AR 26, 27]

## V. STANDARD OF REVIEW

This court's review here is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). Thus, the function of my review of the factual findings is to determine whether they "are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*,

429 F.2d 1149, 1150 (10th Cir. 1970). With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

*A. Determination at Step Three*

On appeal, Plaintiff first contends that the ALJ erred when assessing whether she is presumptively disabled, pursuant to Listing 12.05C, at Step Three of the sequential process, in that her mental impairment is so severe as to preclude substantial gainful employment. Listing 12.05 is entitled "Mental Retardation" and provides as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

The Commissioner does not contest that Plaintiff meets the two requirements set forth in Part C of Listing 12.05; specifically, that her IQ score is between 60 and 70, and that she has other severe impairments that impose an additional and significant work-related limitation of function. At issue is whether Plaintiff meets the "capsule definition of the listing" set forth in the initial paragraph of Listing 12.05; namely, whether she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *See generally* 20 C.F.R., Part 404, Subpt. P, App. 1, § 12.00 (requiring that a claimant must also satisfy the "diagnostic description in the introductory paragraph" also known as the "capsule definition" in addition to "any one of the four set criteria"); *Witt v. Barnhart*, 446 F.Supp.2d 886, 893 (N.D. Ill. 2006)("[w]hile there has been some debate in the past, the SSA now holds that, in order to meet Listing 12.05, a claimant must satisfy the diagnostic description of mental retardation set out in the capsule, as well as the criteria set out in one of the four subsections").

In concluding that Plaintiff did not met the requirements for Listing 12.05C, the ALJ found that:

> The claimant suffers from borderline intellectual functioning. Despite objective measures of the claimant's intellectual functioning which satisfy listing 12.05A; (sic.) for mental retardation and autism, the record does not support that the claimant suffers the requisite deficits in adaptive functioning. The undersigned finds support for this conclusion in the claimant's strong work history. [AR 21]

Plaintiff asserts that the ALJ's findings are insufficient to support his determination that Plaintiff does not meet Listing 12.05C in that his determination that she does not suffer the requisite deficits in adaptive functioning lacks analysis and is not supported by the record. She

specifically asserts that the ALJ's determination is based solely on her ability to work at her job as a magnetic tape loader for an eight year period. The ALJ's finding does not reveal that he considered or weighed any other evidence in the record such as her very minimal earnings before that job, her difficulties in the performance of that job, – including the fact that she was terminated at least in part due to her intellectual limitations – and that she was unsuccessful in securing a new job despite highly intensive support for the Department of Rehabilitation.

Plaintiff refers me to *Barnes v. Barnhart,* 116 Fed.Appx. 934, 2004 WL 2681465 (10th Cir. 2004)(not selected for publication), in which the Tenth Circuit found that the ALJ failed to properly assess the claimant's adaptive functioning abilities pursuant to the capsule definition of Listing 12.05C. First, the Tenth Circuit rejected the ALJ's summary and "ad hoc" analysis when finding that the claimant's "usual daily activities, social life, and educational background" failed to show deficits in adaptive behavior sufficient to meet the capsule definition on the basis that it was not supported by the evidence. *Id.* at 941 (the evidence was that the claimant was placed in special education classes but dropped out of school after tenth grade, was divorced after only two months of marriage, lived with her mother because she was mentally incapable of taking care of her home or children, had no friends, and failed to keep any job for more than a few weeks, at one point holding four different jobs over the course of a few weeks).

On remand, the court directed the ALJ to choose a standard or definition of "defects in adaptive functioning" from one of the measurement methods recognized and endorsed by four professional organizations as set forth by in 67 Fed. Reg at 20,022. *Id.* at 942. For example, the American Psychiatric Association follows that definition in the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), which provides that "deficits in adaptive functioning"

9

are shown by "significant limitations in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Id.*; *see also Witt v. Barnhart, supra,* 446 F.Supp.2d at 895 (*quoting* DSM-IV at 39 & DSM-IV-TR at 41). In addition, the DSM-IV definition requires that "the criterion of significance is a summary index score that is two or more standard deviations below the mean . . . ." *Id.*

In *Witt v. Barnhart*, 446 F.Supp.2d 886, 897 (N.D. Ill. 2006), the district court distinguished its case from *Barnes v. Barnhart, supra*, on the basis that in its case "the ALJ considered the factors and evidence that pertain to an individual's adaptive functioning, as defined by the DSM-IV." *Id.* at 897. The *Witt* court determined that "the evidence of deficits in adaptive functioning in this case is much weaker than *Barnes*, while the ALJ's analysis of that evidence is much stronger than *Barnes*." *Id.* (the evidence was that the claimant graduated high school, worked successfully for almost twenty years, had a successful marriage, and was capable of social functioning). Because the ALJ assessed the proper elements and reached a reasonable and justifiable conclusion, the court concluded that the claimant had "not established that he suffers deficits in adaptive function and he does not meet the capsule requirement under Listing 12.05." *Id.; see also Bouton v. Astrue,* 2008 WL 627469, 9 (D.Kan. March 4, 2008)(ruling that "the evidence from the psychologists cited to by the ALJ demonstrates that the ALJ assessed the skill areas set forth in the DSM-IV for determining a person's limitations in adaptive functioning, and reached a reasonable and justifiable conclusion that [the claimant] did not have the requisite degree of, or significant, deficits of adaptive functioning").

In this case the ALJ's sole basis for his conclusion that the record does not support that

10

Plaintiff suffers the requisite deficits in adaptive functioning is, without any further analysis, her "strong work history." [AR 21] While her ability to function adequately in her job as a machine operator for eight years certainly supports her ability to adapt to work in light of her mental restrictions, the ALJ's order lacks sufficient weighing of the contrary evidence. I reject the Commissioner's assertion that "[a]lthough the ALJ did not specifically address Listing 12.05C, he discussed all evidence of record, which did not include a diagnosis of mental retardation or defects in adaptive functioning before age 22." *See generally Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006)(ruling that the capsule definition of the listing does not require "a formal diagnosis of mental retardation").

The order here does not demonstrate that the ALJ adequately assessed the evidence of Plaintiff's limitations in order to determine whether she has the requisite degree of deficits of adaptive functioning initially manifested before age 22. Moreover, the order lacks any application of a definition or standard used to assess defects in adaptive functioning. *Barnes v. Barnhart, supra*, 116 Fed.Appx. at 942 (*citing* 67 Fed, Reg at 20,022). Finally, the ALJ failed to consider whether Plaintiff's adaptive functioning initially manifested in childhood – before the age of 22 – as required in the capsule definition. *See Smith v. Barnhart,* 2005 WL 823751, 4 (W.D. Va. 2005)(not reported in F.Supp 2d.)(remanding because there was "no indication that the ALJ considered the issue of the impact of [the claimant's] mental state on his adaptive behavior before age 22").

As such, I conclude that the ALJ's order fails to adequately address whether the evidence of Plaintiff's adaptive functioning is sufficient to meet the capsule definition in Listing 12.05(C). "In the absence of ALJ findings supported by specific weighing of the evidence, the

court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the plaintiff did not meet or equal any listed impairment." *Bouton v. Astrue*, *supra* (*citing Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996)).

*B. Determination of RFC*

Plaintiff also asserts that the ALJ erred when assessing her RFC in finding that Plaintiff "is able to perform . . . mathematics at a level one and language at a level one, as described in the <u>Selected Characteristics of Occupations</u>, Scale of General Educational Development" Manual. [AR 24, 26] Plaintiff asserts that her testimony at the hearing and other evidence in the record reveals that she is "illiterate and has, at best, a tenuous grasp of simple arithmetic," which is inconsistent with the levels found by the ALJ. As a result, Plaintiff maintains that the RFC in these areas are not supported by substantial evidence and misrepresent her actual condition. In light of my remand for additional proceedings and findings on the issue of whether Plaintiff's adaptive functioning is sufficient to meet the capsule definition in Listing 12.05C, I further direct the ALJ to specifically address Plaintiff's arguments related to her assessed ability to perform mathematics at a level one and language at a level one in her RFC, if necessary.

Accordingly, IT IS ORDERED that the Commissioner's decision is REVERSED and REMANDED to the SSA Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion.

Dated: May  2 , 2008 in Denver, Colorado.

BY THE COURT:

  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE